## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

LYNN REICH, individually
as surviving spouse of
Gregory M. Reich, deceased, AND
As Personal Representative of the ESTATE
OF GREGORY MARC REICH,

     Plaintiffs,

     v.

GENZYME CORPORATION,
ACCREDO HEALTH GROUP,
and CURASCRIPT, INC.,

     Defendants.

Civil Action No. 1:14-cv-01684-RM-MJW

---

## DEFENDANTS' MOTION TO DISMISS
## PURSUANT TO FED. R. CIV. P. 8, 11(b), 12(b)(6) & 23(d)(1)(D)

Defendants Genzyme Corporation ("Genzyme"), Accredo Health Group, Inc.

("Accredo"), and CuraScript, Inc. ("CuraScript") (collectively, the "Defendants"), by and

through their undersigned counsel, hereby move to dismiss Plaintiffs' August 19, 2016 Third

Amended Complaint pursuant to Federal Rules of Civil Procedure 8, 11(b), 12(b)(6), and

23(d)(1)(D) (the "Motion").  For the reasons set forth below, Defendants' Motion should be

granted.

### PRELIMINARY STATEMENT

In his August 19, 2016 Minute Order (the "August 19 Minute Order," ECF No. 128),

Magistrate Judge Michael J. Watanabe granted Plaintiffs' Motion for Leave to File Third

Amended Complaint because the "changed circumstances" wrought by the February 8, 2016

death of Dr. Gregory M. Reich ("Dr. Reich") entitled his widow, Lynn Reich ("Mrs. Reich"), "to

amend to plead [] new claims because the factual situation has changed as a result of the death of

Dr. Reich." (*Id.* at 2).  The August 19, 2016 Third Amended Complaint (the "TAC," ECF No. 129), however, adds claims and allegations that extend far beyond the circumstances of Dr. Reich's passing, and perpetuates the same deficiencies and errors found in Plaintiffs' Second Amended Complaint (ECF No. 80).[1]

Whether styled as product liability claims, a survival action, or a wrongful death claim, all of the causes of action presented in the TAC appear to be based upon Plaintiffs' new core theory that Dr. Reich's multiple myeloma was caused by his alleged exposure to Cerezyme contaminated with vesivirus 2117.  This theory stands in marked contrast to Plaintiffs' earlier allegations—which Judge Raymond P. Moore's October 7, 2015 Order (the "October 7 Order," ECF No. 78) dismissed with prejudice—that Dr. Reich developed multiple myeloma because he was deprived of sufficient quantities of Cerezyme during a worldwide shortage of the therapy (the "underdosing injuries").  Prior to the October 7 Order dismissing this theory of the case, Plaintiffs consistently attempted to forge a causal link between Dr. Reich's multiple myeloma and the "reduced dose[s] of Cerezyme" that he allegedly received during the shortage.  (ECF No. 74 at 6).

Plaintiffs' new core theory, moreover, is inconsistent with the Court's delineation in the October 7 Order of a permissible "vesivirus theory" of the case.  Plaintiffs previously claimed that vesivirus-contaminated Cerezyme caused Dr. Reich's alleged skin lesions (the "vesivirus injuries"; *see, e.g.*, ECF No. 31 ¶ 102).  In the TAC, however, Plaintiffs boldly re-plead the dismissed underdosing injuries, claiming that they now fall within the scope of the vesivirus theory permitted by the October 7 Order.  This is the same strategy Plaintiffs pursued in their

---

[1] In its August 19 Minute Order permitting the filing of the new Third Amended Complaint, the Court ruled that Defendants' motions to dismiss Plaintiffs' Second Amended Complaint (ECF Nos. 88 & 89) are moot, since the Second Amended Complaint is no longer the operative complaint.  (ECF No. 128 at 2).

initial, rejected Third Amended Complaint (ECF No. 93), which they filed on December 15, 2015—well in advance of the "changed circumstances" occasioned by Dr. Reich's passing.[2]

Neither the "changed circumstances" brought on by the passing of Dr. Reich nor the August 19 Minute Order entitle Plaintiffs to assert allegations that so nakedly contradict their previous representations to this Court.  The August 19 Minute Order permitted discrete amendment of the operative pleading to allow for the inclusion of claims consistent with the Colorado Survival of Actions and Wrongful Death statutes; it did not grant Plaintiffs carte blanche to alter the theory of their case so radically or to re-assert allegations already dismissed with prejudice.  Rule 11(b) of the Federal Rules of Civil Procedure binds Plaintiffs to their previous allegations, which constitute judicial admissions.  *See, e.g.*, *Martinez  v. Bally's La., Inc.*, 244 F.3d 474, 476 (5th Cir. 2001).  They should be estopped from asserting allegations that are so inconsistent with their prior representations, and that constitute such an obvious attempt to evade the October 7 Order. What is more, the TAC impermissibly adds new factual allegations and a new cause of action for "Concealed Civil Battery" not connected with the death of Dr. Reich.  As Defendants pointed out in their Opposition to Plaintiffs' Motion for Leave to File the TAC (ECF No. 126), the 'new' allegations and factual bases for the civil battery claim are not in fact new, and Plaintiffs should not be permitted to raise them after more than two years of litigation simply because they failed to include them in their first several pleadings.

Even if the Court finds Plaintiffs' inconsistent pleading practices permissible, however, Plaintiffs' own allegations, drawn from the five pleadings they have filed in this case, suggest a more plausible cause of the injuries that led to Dr. Reich's death than his injection of allegedly

---

[2] On January 14, 2016, this Court rightfully denied Plaintiffs' Motion for Leave to File Third Amended Complaint (ECF No. 93) as **untimely** ("Plaintiffs have had multiple opportunities to amend their Complaint and have failed to explain adequately to this Court why the amendments sought in the Third Amended Complaint could not have been plead in the Second Amended Complaint") and the product of "**undue delay**," which together would cause Defendants to "**suffer undue prejudice**" if granted (ECF No. 99 at 2) (emphasis added).

vesivirus-contaminated Cerezyme.  Gaucher patients are at an increased risk for various cancers, especially hematologic malignancies like multiple myeloma.  As a Gaucher patient, Dr. Reich was *always* at risk of developing multiple myeloma, for which he had an "approximately 37.5 fold-increased" susceptibility, as Plaintiffs themselves admitted. (ECF No. 31 ¶ 11).  Rule 12(b)(6) of the Federal Rules of Civil Procedure and the pleading standards established by *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), require courts to engage in a threshold analysis of the plausibility of a plaintiff's claims, including whether the factual allegations supporting these claims suggest a more plausible theory of the case.  Plaintiffs wish the Court to believe that Dr. Reich's multiple myeloma was caused by vesivirus-contaminated Cerezyme, rather than by his pre-existing Type 1 Gaucher disease or the deprivation of Cerezyme, as they previously alleged.  The TAC points to no scientific literature that supports the causation framework alleged in the TAC: namely, that Dr. Reich received Cerezyme containing traceable amounts of vesivirus 2117, that Dr. Reich was infected with vesivirus 2117 as a result of injecting this Cerezyme, and that vesivirus 2117 is capable of causing multiple myeloma in humans.

The procedurally improper, inconsistent, and implausible allegations in the TAC require its dismissal with prejudice, including Plaintiffs' newly-added civil battery claim.  Plaintiffs' class allegations should finally be dismissed as well: even if the Court were to permit any of Plaintiffs' survival or wrongful death claims to proceed, those allegations are not susceptible to class treatment, and further, Mrs. Reich is not an adequate class representative.

As the Court noted most recently in its Minute Order, Plaintiffs' inability to plead a clear and consistent case has caused "the Court and Defendants" to expend "considerable resources" (ECF No. 128 at 3).  In the event that any of Plaintiffs' implausible claims are allowed to

proceed, the Court should insist that Plaintiffs make a *prima facie* showing that their new core theory is scientifically and medically plausible, and that credible evidence exists to support it. Plaintiffs have enjoyed no less than five opportunities over the course of two years to clarify the scope of their claims and make a threshold showing of a causal nexus between Dr. Reich's injuries and Defendants' alleged conduct.  Plaintiffs should be required to provide expert reports stating that Cerezyme allegedly contaminated with vesivirus 2117 is  capable of causing multiple myeloma or death in a claimant like Dr. Reich.  Under these circumstances, this question is a threshold issue that should be tested through a *Daubert*[3] challenge before both the Court and Defendants are required to expend any additional resources on this case.

## PROCEDURAL HISTORY AND BACKGROUND

The procedural history of this case is well known to the Court, and Defendants thus dispense with a detailed recounting of it here.  *See* ECF No. 99 at 1 ("I find that the Background and Procedural History portion of Defendants' Opposition to Plaintiffs' Motion for Leave to File Third Amended Complaint [] at pages 1 through 3, inclusive, is accurate and is incorporated by reference into this Order.").  Before the Court's October 7 Order, Plaintiffs consistently alleged in both their original complaint (ECF No. 1) and Amended Complaint (ECF No. 31) that Dr. Reich experienced deterioration in his Gaucher disease and developed multiple myeloma because he failed to receive his customary pre-shortage dose of Cerezyme at certain points between 2009 and 2011.  (ECF No. 31 ¶¶  1, 97, and 126).  According to the Amended Complaint, "untreated Gaucher patients are at approximately 37.5 fold-increased risk of multiple myeloma."  (*Id*. ¶ 11).  Plaintiffs alleged that individuals with Gaucher disease have a reduced ability to degrade the lipid glucosylceramide into glucose and ceramide, which is known as "glucocerebroside deposition," leading to the accumulation of large quantities of this lipid within

---

[3] *See Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 508 U.S. 579 (1993).

the lysosomes of macrophages (termed 'Gaucher cells'), causing the enlargement of those cells.

(*Id.* ¶10).  The Amended Complaint detailed the "widespread secondary pathology" of the disease, including multiple myeloma, low blood platelet count, anemia, bone injury, and chronic pain.  (*Id.*).  All of the injuries allegedly suffered by Dr. Reich were alleged to be secondary to the progression of his Gaucher disease and multiple myeloma, and supposedly resulted from Dr. Reich not receiving sufficient quantities of Cerezyme during the worldwide shortage.

The original and Amended Complaint alleged that due to an inadequate supply of Cerezyme, Dr. Reich suffered the following, specific injuries:

- Glucocerebroside deposition
- Multiple myeloma
- Bone deterioration
- Excisional bone surgery
- Chemotherapy (for treatment of the multiple myeloma)
- Lost ability to walk without assistance
- Skin lesions
- Chronic pain

(*Id.* ¶ 102).  All of these injuries were alleged to be secondary to the progression of Dr. Reich's Gaucher disease and multiple myeloma.  With the possible exception of skin lesions, they constitute the underdosing injuries.  Plaintiffs did not specifically allege in the Amended Complaint that any of Dr. Reich's injuries (including multiple myeloma) were caused by vesivirus-contaminated Cerezyme.  Rather, Plaintiffs alleged that Dr. Reich's Gaucher disease progressed to multiple myeloma because he was deprived of his customary dose of Cerezyme during the shortage.  (*Id.* ¶ 72, 97).  As for the alleged contamination of Cerezyme with vesivirus 2117, Plaintiffs' Amended Complaint alleged that vesivirus "causes infectious disease in humans with observations of viremia [virus in the blood], vesicular skin lesions [blisters], antigenicity

[able to induce an immune response], antibody seroconversion [development of detectable antibodies], hepatitis, and potentially inducing [sic] spontaneous abortions."  (ECF No. 31 ¶ 27).[4]

In its October 7 Order, the Court dismissed with prejudice Plaintiffs' underdosing theory and all related causes of action with prejudice.  (ECF No. 78).  Upon Plaintiffs' request for leave to file a new complaint, the Court found in the "prolix, obfuscatory, and convoluted" Amended Complaint (ECF No. 78 at 10) one possible overlap between the injuries allegedly suffered by Dr. Reich and the injuries Plaintiffs claimed could be caused in humans allegedly exposed to vesivirus as a result of injecting Cerezyme.  Specifically, the Court noted that Dr. Reich allegedly suffered "skin lesions," an injury that Plaintiffs claimed could be caused in humans exposed to vesivirus:

> Plaintiffs object to the exclusion of the vesivirus from causing Plaintiffs' injuries.  The Court agrees with Plaintiffs.  That is Plaintiffs pled that Cerezyme contained vesivirus. Vesivirus causes infectious diseases in humans with observations of viremia, *vesicular skin lesions*, antigenicity, antibody seroconversion, and hepatitis.  Reich was treated with Cerezyme that contained vesivirus.  Genzyme, Accredo, and Curascript sold Reich Cerezyme that contained vesivirus.  Reich developed *skin lesions* due to Defendants' conduct.  Thus, the Court finds Plaintiffs pled a causal connection between vesivirus and Reich's injuries.

(ECF No. 78 at 17) (emphasis in original; citations and formatting omitted).  The Court cautioned, however, that it was "unable to determine, at this time, whether Plaintiffs' [vesivirus] claims are sufficient as a matter of law."  (*Id.* at 17).

The Court allowed Plaintiffs to file another amended complaint under the so-called "vesivirus theory," and specifically to do so in a way that allowed the Court (and Defendants) to

---

[4] Plaintiffs cited two articles in the SAC to support the proposition that "vesivirus causes infectious disease in humans," but neither of these articles actually support  that claim.  Instead, the articles merely speculate about a possible association between a particular strain of vesivirus and infections in humans.  *See* ECF No. 80 ¶ 19; Smith, *et al.* "*Vesivirus viremia and seroprevalence in humans.*" J. Med. Virol. 78(5): 693-701 (2006); Heetae, *et al.* "*Elevated post-transfusion serum transaminase values associated with a highly significant trend for increasing prevalence of anti-vesivirus antibody in Korean patients*," J. Med. Virol., 84(12): 1943-1952 (December 2012).

determine "whether Plaintiffs' claims are sufficient as a matter of law."  If Plaintiffs chose to re-file, any new complaint would have to comply with the October 7 Order dismissing the case with leave to re-plead.  As a matter of Tenth Circuit law, a plaintiff is not permitted to re-plead facts inconsistent with, or contrary to, a district court's order dismissing the original complaint without prejudice pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

Moreover, a new amended complaint would have to allege more than "'the mere metaphysical possibility that some plaintiff could prove some set of facts in support of the pleaded claims . . . the complaint must give the court reason to believe that *this* plaintiff has a reasonable likelihood of mustering factual support for *these* claims.'" (ECF No. 78 at 3) (quoting and adding emphasis from *Ridge at Red Hawk, LLC v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007)).

Plaintiffs chose to re-file their complaint, first by filing the Second Amended Complaint (ECF No. 80), and then by attempting unsuccessfully to file their initial, rejected Third Amended Complaint (ECF No. 93-1).  After the passing of Dr. Reich, Plaintiffs were granted leave to file the current operative TAC, which now claims that Dr. Reich's multiple myeloma was caused not by the deprivation of Cerezyme or Dr. Reich's pre-existing Gaucher disease, but by Dr. Reich's alleged exposure to vesivirus–contaminated Cerezyme.  As this Court observed in its Report and Recommendation, Plaintiffs' original allegations about vesivirus—if they could be understood at all—did "not state a claim of injury as a result of such contaminants" but "merely list[ed] various complications that generally may result from such contaminants" and that Plaintiffs' alleged injuries did "not on their face include any possible complications of the contaminants."  ECF No. 73 at 14-15.[5]

---

[5] Scattered throughout the TAC are a host of alleged injuries other than those that fall under the aegis of the core theory that vesivirus 2117 exposure causes multiple myeloma, many of which Plaintiffs previously alleged were

The allegations that Plaintiffs include in the TAC are far from newly-available, or even new to the case. Most of them consist of the same allegations that Plaintiffs attempted to insert when they filed their last Motion for Leave to File Third Amended Complaint (ECF No. 93).[6] The TAC purports to assert, pursuant to the Colorado Survival of Actions and Wrongful Death statutes, claims that are factually inconsistent with previous pleadings. In addition to substituting Dr. Reich's estate as proper party to this litigation and eliminating Mrs. Reich's derivative loss of consortium claim, the TAC includes new causes of action for "Concealed Civil Battery" (ECF No. 123-1 at ¶¶ 82-91) and supposedly new factual allegations, almost all of which can be traced back to Plaintiffs' Second Amended Complaint and rejected proposed Third Amended Complaint. The TAC identifies no plaintiffs other than Mrs. Reich, as personal representative of Dr. Reich's estate, and the estate itself. The TAC also includes allegations relating to a putative product liability class.

The question presented by this Motion is whether the TAC, in light of Plaintiffs' own prior allegations and the Court's prior orders, meets this Court's standards for pleading or

---

caused by underdosing. Consistent with all of Plaintiffs' pleadings, Plaintiffs' counsel have included a long and confusing list of claimed injuries, seldom making clear whether these injuries are separate from or part of the new core theory or some other separately compensable injury, leaving it to the Court and Defendants to further guess at the scope of the asserted claims. Such alleged injuries include: anaphylaxis to subsequent Cerezyme doses, cellular and organ damage, antiapoptosis (cellular immortalization), cellular damage at the injection site, cellular proliferation, gastroenteritis (stomach flu), chronic vesicular skin lesions, hematological injury, hepatitis, latent infection, multiple myeloma, neurological injury, peripheral pain, and viremia. As pointed out in Defendants' now-mooted Motion to Dismiss the Second Amended Complaint, by not including any information in the TAC about when this list of injuries occurred, the foundational elements of Plaintiffs' case remain obscured. *See* ECF 89 at 14-16. Indeed, the one date Plaintiff included in the Second Amended Complaint ("REICH's cause of action accrued on June 19, 2012, when was diagnosed with multiple myeloma") (ECF No. 80 ¶ 30), has inexplicably been removed from the TAC.

[6] Specifically, by Defendants' count, of the **twenty-three (23)** new wholesale allegations (*i.e.*, paragraphs that purport to be newly-alleged in their entirety) that Plaintiffs unsuccessfully attempted to assert in the last proposed Third Amended Complaint, Plaintiffs have included **fifteen (15)** of them in the TAC. (ECF No. 93-1, at ¶¶ 21, 22, 23, 24, 25, 26, 27, 29, 30, 31, 32, 33, 34, 35, 61). This does not include revisions to existing paragraphs from the Second Amended Complaint, most of which were also carried over to the TAC. A complete comparison of the allegations that Plaintiffs unsuccessfully included in their dismissed Third Amended Complaint with the allegations they currently assert in the TAC is included as *Exhibit 1*.

otherwise permissibly states a valid cause of action.  Defendants respectfully request that the

Court answer that question in the negative, and recommend dismissal of this case with prejudice.

<u>ARGUMENT</u>

Like all federal pleadings, the TAC is subject to strict review under Rule 8 of the Federal

Rules of Civil Procedure and the mandate that every complaint contain allegations sufficient to

"raise the right of relief above the speculative level."  *Twombly*, 550 U.S. at 555; *see also Reich*

*v. Genzyme Corp.*, No. 14-CV-01684-RM-MJW, 2015 WL 5842418, at *2 (D. Colo. Oct. 7,

2015) (citing same).  These allegations must "plausibly give rise to an entitlement of relief," *id.*,

and must be "more than a formulaic recitation of the elements of a cause of action."  *Iqbal*, 556

U.S. at 679.

As this Court held,  a plaintiff in the Tenth Circuit "must 'nudge [] [his] claims across the

line from conceivable to plausible in order to survive a motion to dismiss. . . . Thus, the mere

metaphysical possibility that *some* plaintiff could prove *some* set of facts in support of the

pleaded claims is insufficient; the complaint must give the court reason to believe that *this*

plaintiff has a reasonable likelihood of mustering factual support for *these* claims."  *Ridge at Red*

*Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007) (emphasis in original, internal

citation and quotation omitted); *see also Khalik v. United Air Lines*, 671 F.3d 1188, 1191 (10th

Cir. 2012) (internal quotation and citation omitted).

A.  <u>The TAC Should Be Dismissed Because Plaintiffs Are Estopped</u>
<u>From Alleging A New Core Theory Of Injury</u>

As Defendants argue *supra*, the TAC impermissibly alters Plaintiffs' core theory of

injury, and their new theory directly contradicts earlier allegations they have asserted in this case.

Plaintiffs' original and Amended Complaints alleged that Dr. Reich developed multiple myeloma

because he did not receive sufficient quantities of Cerezyme.  (*See* ECF No. 31 ¶ 102).  Now,

Plaintiffs claim that Dr. Reich's multiple myeloma and all other associated injuries were caused by exposure to Cerezyme allegedly contaminated with vesivirus 2117, which Plaintiffs claim is capable of causing cancer.  (ECF No. 129 ¶¶ 34-41, 44).  Plaintiffs cannot claim that the same injuries they previously attributed to underdosing were, in fact, caused by Dr. Reich's alleged exposure to vesivirus, especially where they base the latter allegations on the same facts as the former, all of which were known and knowable to Plaintiffs when they initiated this litigation over two years ago.

Plaintiffs' new core theory is strikingly inconsistent with factual statements they have asserted in prior iterations of their pleading.  Accordingly, this Court is under no obligation to accept their new core theory of the case as true.  *Lacey v. Maricopa County*, 693 F.3d 896, 939 (9th Cir. 2012), *superseded on other grounds by statute* (facts alleged in an amended complaint "must not be inconsistent with those already alleged"); *Bradley v. Chiron Corp.,* 136 F.3d 1317, 1325–26 (Fed. Cir. 1998) (district court "was not required to accept as true inconsistent allegations in the second amended complaint"); *see also Palm Beach Strategic Income, LP v. Salzman*, No. 10-CV-261 JS AKT, 2011 WL 1655575 (E.D.N.Y. May 2, 2011) *aff'd*, 457 F. App'x 40 (2d Cir. 2012) (listing cases, noting that "a district court has no obligation to accept as true an amended complaint's allegations, if they directly contradict those facts set forth in the original complaint.") (internal quotations and citations omitted).

Rules 8 and 11(b) of the Federal Rules of Civil Procedure bind Plaintiffs to their previous allegations, which constitute judicial admissions.  *See, e.g.*, *Martinez  v. Bally's La., Inc.*, 244 F.3d 474, 476 (5th Cir. 2001).  Many courts have held that a party's assertion of fact in a pleading constitutes a judicial admission "by which [the party] is normally bound throughout the course of the proceeding."  *Schott v. Motorcycle Supply Inc. v. American Honda Motor Co.*, 976

F.2d 58, 61 (1st Cir. 1992) (quoting *Bellefonte Re Ins. Co. v. Argonaut Ins. Co.*, 757 F.2d 523,

528 (2d Cir. 1985)); *see also Davis v. A.G. Edwards and Sons, Inc.*, 823 F.2d 105, 108 (5th Cir.

1987). The Third Circuit has held that "to be binding, judicial admissions must be unequivocal."

*Glick v. White Motor Co.*, 458 F.2d 1287, 1291 (3d Cir. 1972); *see also Greenwell v. Boatwright*,

184 F.3d 492, 498 (6th Cir. 1999) (holding that "deliberate, clear and unambiguous" statements

constitute judicial admissions); *Schott Motorcycle Supply, Inc. v. American Honda Motor Co.*,

976 F.2d 58, 61 (1st Cir. 1992) (affirming the district court's finding of a judicial admission from

a "clear[] and unambiguous[]" allegation in the complaint). When a statement meets such a

threshold, "even if [] post-pleading evidence conflicts with the evidence in the pleadings,

admissions in the pleadings are binding on the parties and may support summary judgment

against the party making such admissions." *Missouri Housing Dev. Comm'n v. Brice*, 919 F.2d

1306, 1315 (8th Cir. 1990). While judicial admissions normally bind a party throughout the

course of the litigation, trial judges have discretion to relieve parties from the consequences of

judicial admissions where, for example, the mistake in asserting inconsistent allegations was an

honest one. *Coral v. Gonse*, 330 F.2d 997, 998 n.1 (4th Cir. 1964).

    Plaintiffs cannot plead facts in a later-amended complaint that so nakedly contradict

allegations contained in a previous version of this pleading. *See, e.g.*, *Patrick v. McManus*, 14

Colo. 65, 68, 23 P. 90, 91, 1890 Colo. LEXIS 334, *4-5 (Colo. 1890) (sham pleading "is the

pleading of a matter known by the party to be false, for the purpose of delay or other unworthy

object."). The doctrine of "sham pleading" is applicable where (as here) a party files an

amended complaint and seeks to avoid the defects of a prior complaint either by omitting the

facts that rendered the complaint defective or by pleading facts inconsistent with the allegations

of prior pleadings. *Owens v. Kings Supermarket*, 198 Cal. App. 3d 379, 384, 243 Cal. Rptr. 627,

630, 1988 Cal. App. LEXIS 68, *6-7 (Cal. App. 1st Dist. 1988) (holding that the rule against sham pleading applies where a plaintiff alleged in the original complaint that an injury occurred outside of defendant's business, and later amended to argue that it took place inside when the court did not credit its argument as to why a duty should apply to the former). *See also Hills Trans. Co.* v. *Southwest Forest Industries, Inc.*, 266 Cal.App.2d 702, 712-713 (1968); *Kenworthy* v. *Brown*, 248 Cal.App.2d 298, 302 (1967). When the Court dismissed Plaintiffs' underdosing theory with prejudice, Plaintiffs shifted their story to claim that Dr. Reich's injuries resulted from viral contamination of the same Cerezyme the deprivation of which had allegedly caused these injuries, relying upon *the same set of facts* to support both arguments. The policy against sham pleading permits courts to take judicial notice of prior pleadings, and requires that the pleader explain any inconsistency. If he or she fails to do so, the court may disregard the inconsistent allegations and read into the amended complaint the allegations of the superseded complaint. *Hills Trans. Co.*, 266 Cal.App.2d at 709-711; *Kenworthy*, 248 Cal. App. 2d at 302. Here, the Court is empowered to disregard Plaintiffs' new core theory of injury, and to hold Plaintiffs to their prior allegations that vesivirus 2117 caused skin lesions—not cancer.

   B.   Plaintiffs' New Allegations Exceed The Permissible Scope Of The October 7 Order

      The TAC not only repudiates Plaintiffs' prior allegations, it is a direct attempt to circumvent the October 7 Order by re-arguing the now-dismissed underdosing theory and its associated injuries under the aegis of an ostensibly permissible vesivirus theory. The October 7 Order clearly contemplated the narrow scope of the vesivirus theory, and Plaintiffs themselves led the Court to that view. In their objection to the Court's Report and Recommendation (ECF No. 74), Plaintiffs argued that they had in fact stated a cause of action based upon vesivirus, and emphasized their argument by underlining that "vesicular skin lesions" were allegedly linked to

vesivirus and that Dr. Reich "<u>developed skin lesions</u>." (ECF No. 74 at 2, n.1)(emphasis in original). In the October 7 Order, the Court was careful to note that it was "unable to determine, at this time, whether Plaintiffs' [vesivirus] claims are sufficient as a matter of law." (ECF No. 78 at 17).

Additionally, where a complaint has been dismissed in its entirely but leave to re-plead is granted, a plaintiff must prepare and file an amended complaint that is consistent with and honors the district court's order of dismissal. *See Ranneva v. Soc. Sec. Admin.*, 416 F. App'x 702, 703 (10th Cir. 2011) (district court did not abuse its discretion by dismissing action without prejudice for plaintiff's failure to comply with magistrate judge's order to file amended complaint in compliance with rules of judicial procedure); *see also Miller v. Lusk*, No. 11-CV-03365-RBJ-BNB, 2014 WL 321702, at *3 (D. Colo. Jan. 29, 2014); *Kuntz v. New York State Bd. of Elections*, 924 F. Supp. 364, 367-68 (N.D.N.Y. 1996), *aff'd sub nom. Kuntz v. New York State Senate*, 113 F.3d 326 (2d Cir. 1997) ("Because plaintiff's Amended Complaint far exceeds the scope of the Court's permission to amend, and because that excess appears in large measure to be at worst frivolous and at best unfairly onerous and burdensome for the numerous defendants to respond to, the Court hereby dismisses all of plaintiff's Amended Complaint . . ."); *In re Keithley Instruments, Inc., Derivative Litig.*, 599 F. Supp. 2d 908 (N.D. Ohio 2009) (third amended complaint exceeded scope of leave granted and would be stricken to the extent it asserted new causes of action where order granting leave to amend did not permit this); *see also Ridge at Red Hawk,* 493 F.3d at 1177. It is especially true that when a district court dismisses certain claims with prejudice, it is improper for a plaintiff to attempt to re-plead them. *Adams v. Kinder-Morgan, Inc.*, 340 F.3d 1083, 1094 (10th Cir. 2003), *as amended on denial of reh'g* (Aug. 29, 2003).

Because Plaintiffs must comply fully with the Court's October 7 Order and courts must hold litigants to their prior allegations and prevent them from contradicting themselves in order to avoid a negative ruling, Plaintiffs should not be permitted to use the vesivirus theory to test a novel and unsupported claim that vesivirus 2117 caused Dr. Reich's multiple myeloma.

C.   Plaintiffs' Novel Vesivirus Claims Are Implausible
And Should Be Dismissed With Prejudice Under Fed. R. Civ. P 12(b)(6)

The TAC is subject to strict review under Rule 8 of the Federal Rules of Civil Procedure and the mandate that every complaint contain allegations sufficient to "raise the right of relief above the speculative level." *Twombly*, 550 U.S. at 555; *see also Reich v. Genzyme Corp.*, 2015 WL 5842418, at *2. The allegations must "plausibly give rise to an entitlement of relief," *id.*, and must be "more than a "formulaic recitation of the elements of a cause of action." *Iqbal*, 556 U.S. at 679.

As this Court held, a plaintiff in this Circuit "must 'nudge [] [his] claims across the line from conceivable to plausible in order to survive a motion to dismiss. . . . Thus, the mere metaphysical possibility that *some* plaintiff could prove *some* set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that *this* plaintiff has a reasonable likelihood of mustering factual support for *these* claims." *Ridge at Red Hawk*, 493 F.3d at 1177 (emphasis in original, internal citation and quotation omitted); *see also Khalik v. United Air Lines*, 671 F.3d 1188, 1191 (10th Cir. 2012) (internal quotation and citation omitted). Rule 8 "does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions"; a court must determine whether the facts a plaintiff pleads "plausibly give rise to an entitlement to relief," because "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Morman v. Campbell Cnty. Mem. Hosp.*, 632 Fed. App'x 927, 932 (10th Cir. 2015) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662 (2009)).

One crucial aspect of the *Twombly/Iqbal* plausibility analysis focuses on the relative plausibility of a claimant's theory of the case.  Specifically, where a plaintiff's own alleged facts suggest a more plausible theory than the one that he or she propounds, dismissal is appropriate. *Iqbal*, 556 U.S. at 681-82; *Morman*, 632 Fed. App'x at 934-36 (holding that the Equal Protection Clause does not support a claim for gender-based discrimination where plaintiff alleged facts suggesting that plaintiff was not as qualified as other surgeons elevated to higher positions). Furthermore, although the issue has never been addressed by the Tenth Circuit, other courts have held that it is appropriate to look to inconsistent or contradictory allegations in prior iterations of a complaint when undertaking the *Twombly/Iqbal* plausibility determination.  "[W]hen evaluating an amended complaint, '[t]he court may also consider the prior allegations as part of its "context-specific" inquiry based on its judicial experience and common sense to assess whether' an amended complaint 'plausibly suggests an entitlement to relief.'" *McKenna v. WhisperText*, 2015 U.S. Dist. LEXIS 120090, at *7-9 & n. 32 (N.D. Cal. Sept. 9, 2015) (quoting *Stanislaus Food Prods. Co. v. USS-POSCO Indus.*, 782 F. Supp. 2d 1059, 1076 (E.D. Cal. 2011)) (cataloguing authorities). Under this approach, any inconsistency between the TAC and Plaintiffs' earlier pleadings can be used to show that the new pleading raises implausible claims.

This sort of "relative plausibility" analysis is warranted here.  Plaintiffs have admitted in prior pleadings that a well-documented association exists between Gaucher disease and multiple myeloma (see ECF No. 31 ¶ 11).  In their original and Amended Complaint, they alleged that Dr. Reich's Gaucher disease progressed to multiple myeloma because he did not receive his customary dose of Cerezyme at certain points during the shortage.  This argument formed the core of their case until the Court dismissed it with prejudice.  Plaintiffs' prior, binding representations concerning Gaucher disease and multiple myeloma seem to concede that Dr.

Reich developed multiple myeloma because it is a common secondary pathology of Gaucher disease, and for no other reason. While the TAC asserts the four causes of action permitted by the Court's October 7 Order[7] and purports to assert them under the aegis of the vesivirus theory, it does not nudge Plaintiffs' claim across the line from conceivable to plausible. Even if Plaintiffs had a good faith basis for alleging that Dr. Reich was exposed to vesivirus 2117 via the injection of contaminated Cerezyme, as well as for alleging that some injury (*e.g.*, skin lesions) occurred as a result of this exposure, it is implausible in the context of Plaintiffs' pleading history that Dr. Reich's multiple myeloma was caused by exposure to vesivirus 2117.

The TAC alleges that vesivirus "causes infectious disease in humans with observations of viremia, vesicular skin lesions, antigenicity, antibody seroconversion, B-cell stimulation, hepatitis, and potentially inducing [sic] spontaneous abortions." (ECF No. 129 ¶ 22). These allegations are drawn almost word-for-word from the Second Amended Complaint (*see* ECF No. 80 ¶ 19). Yet the TAC goes further to claim that vesivirus 2117 caused Dr. Reich's cancer. (*See, e.g.*, ECF No. 129 at ¶¶ 34-41, 44). To assess the strength of the causal nexus between Dr. Reich's alleged exposure to vesivirus 2117 and his multiple myeloma, a simple look at Plaintiffs' own allegations reveals how implausible it is that vesivirus 2117 caused this disease. Plaintiffs cite no articles, research, or studies that support the notion that vesivirus 2117 causes multiple myeloma. The most plausible cause of Dr. Reich's cancer is the theory that Plaintiffs themselves earlier alleged: that Dr. Reich developed multiple myeloma as a result of his pre-existing Type 1 Gaucher disease.

---

[7] Negligence, negligence per se, strict liability, and breach of warranty.

D.  **If The Court Permits Plaintiffs' Novel Theory To Proceed, Plaintiffs Should Be Required To Make A *Prima Facie* Showing Of Its Scientific and Medical Plausibility**

If any of Plaintiffs' claims are allowed to proceed, the Court should insist that Plaintiffs make a *prima facie* showing that their new core theory—that Dr. Reich was exposed to vesivirus 2117 via contaminated Cerezyme, which caused his multiple myeloma—is scientifically and medically plausible, and that credible evidence exists to support it.  Plaintiffs have enjoyed no less than five opportunities over the course of more than two years to clarify the scope of their claims and make a threshold showing of a causal link between Dr. Reich's injuries and Defendants' alleged conduct.   Specifically, Plaintiffs should be required to provide expert reports stating that Cerezyme allegedly contaminated with vesivirus 2117 is capable of causing multiple myeloma and/or death in a claimant like Dr. Reich.  Neither the Court nor Defendants should be forced to expend any additional resources on a case that is based on a core theory so unsupported by any extant scientific or medical literature. Under the circumstances, it is fair and reasonable that Plaintiffs satisfy the threshold issue of whether their core theory has any basis in proven scientific fact.  Plaintiffs' allegations that Cerezyme contaminated with vesivirus 2117 is capable of causing multiple myeloma should be tested via a *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 508 U.S. 579 (1993) challenge.  This Court has the authority under Rule 16(c) of the Federal Rules of Civil Procedure to fashion an order to address this threshold issue.

E.  **Plaintiffs' Newly-Added Cause of Action For "Concealed Civil Battery" Should Be Stricken And Dismissed With Prejudice**

Plaintiffs' newly-added cause of action for "Concealed Civil Battery" (*see* ECF No. 123-1 at ¶¶ 82-91) should be stricken and dismissed with prejudice as untimely.  Plaintiffs' rote recitation of the elements of a civil battery claim cannot, on its face, survive judicial scrutiny, particularly where all of the facts upon which the claim is based were both knowable to and

18

known to Plaintiffs when they initiated this litigation over two years ago.  The statute of limitations for a civil battery claim is *one year*.  Colo. Rev. Stat. Ann. § 13-80-103(1)(a).  A cause of action accrues "on the date both the injury and its cause are known or should have been known by the exercise of reasonable diligence." C.R.S. § 13-80-108 (1).  Count I of the TAC should be dismissed with prejudice.

F.   Plaintiffs' Class Action Allegations Should Be Dismissed Pursuant To Rule 23(d)(1)(D)

In its Motion to Dismiss (ECF No. 89), Genzyme sets out at length arguments for why Plaintiffs' class allegations fail, and thus warrant dismissal.  (*See id.* at 15-25).  Defendants adopt by reference those arguments, and further add that Mrs. Reich, as personal representative of her late husband's estate, can in no way serve as representative of a putative class, nor can Dr. Reich's estate itself; for these reasons, Plaintiffs' class allegations should finally be dismissed with prejudice.[8]

---

[8] Plaintiffs bear the burden of proving that the prerequisites to class certification have been met.  *Rex v. Owens ex rel. Okla.*, 585 F.2d 432, 435 (10th Cir. 1978).  Mrs. Reich is an inadequate class representative for many reasons, including because she cannot claim to have suffered the alleged injuries of the putative class asserted by the TAC.  She has never alleged that she suffers from Gaucher disease, and never alleged that she has injected Cerezyme— let alone Cerezyme allegedly contaminated with vesivirus 2117.  Rule 23(a)(3) of the Federal Rules of Civil Procedure requires a plaintiff to show that "the claims or defenses of the representative parties are typical of the claims or defenses of the class."  Fed. R. Civ. P. 23(a)(3).  The typicality requirement determines whether the legal or factual position of the named plaintiff "is markedly different" from the position of other class members. *Marcus v. BMW of N. Am., LLC*, 687 F.3d 583, 598 (3rd Cir. 2012).  To assess typicality, courts consider whether the named plaintiff's claims are generally the same as those of other class members with respect to the relevant legal theory and factual circumstances.  Not only has Mrs. Reich asserted no personal injury in fact, but she cannot claim to have sustained the specific injuries at issue.  "In determining the propriety of a class action, the question is not whether the plaintiff or plaintiffs have stated a cause of action or will prevail on the merits, but rather whether the requirements of Rule 23 are met." *Anderson v. City of Albuquerque*, 690 F.2d 796, 799 (10th Cir. 1982).  There are also questions about whether, as personal representative of her late husband's estate, Mrs. Reich can adequately represent absent class members and fulfill her fiduciary responsibilities to the estate without a conflict of interest vis-a-vis her own claim as a wrongful death plaintiff.  Finally—although this is by no means an exhaustive argument against class certification in the instant case—as the widow of putative pre-certification class representative Dr. Reich, Mrs. Reich is not alleging that she suffered any of the injuries that he did; thus, she does not have standing to serve as class representative.  Threshold individual standing is a prerequisite for all actions, including class actions, and must be satisfied by an aspiring class representative in addition to the Rule 23 requirements. *Allee v. Medrano*, 416 U.S. 820, 828-29 (1974)("A named plaintiff cannot acquire standing to sue by bringing his action on behalf of others who suffered injury which would have afforded them standing had they been named plaintiffs; it bears repeating that a person cannot predicate standing on an injury which he does not share. Standing cannot be acquired through the back door of a class action.").

CONCLUSION

For the reasons set forth above, Plaintiffs' Third Amended Complaint should be dismissed with prejudice, and Plaintiffs' class allegations should be stricken and dismissed with prejudice.

CERTIFICATE OF CONFERRAL
PURSUANT TO CIV. PRACTICE STANDARD IV.M.2.A

The undersigned counsel state that they conferred with counsel for Plaintiffs via telephone on September 8, 2016.  Plaintiffs oppose the relief sought herein.

Respectfully submitted this 9th day of September, 2016.

/s Thomas B. Quinn
Thomas B. Quinn
Joshua G. Urquhart
GORDON & REES LLP
555 Seventeenth Street
Suite 3400
Denver, CO 80202
tquinn@gordonrees.com
jurquhart@gordonrees.com

**Attorneys for Defendants Accredo Health Group, Inc. and CuraScript, Inc.**

/s/ Charles Q. Socha
Charles Q. Socha
Christina M. Huszcza
TUCKER ELLIS LLP
Metropoint I, Suite 1325 4600 S. Ulster Street
Denver, CO 80237
Telephone: 720.897.4400
Facsimile: 720.222.5242
charles.socha@tuckerellis.com
christina.huszcza@tuckerellis.com

John C. Dougherty
Keelan F. Diana
FROMMER LAWRENCE & HAUG LLP
745 Fifth Avenue
New York, New York 10151
Telephone: 212.863-2142
jdougherty@flhlaw.com
kdiana@flhlaw.com

**Attorneys for Defendant Genzyme Corporation**

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that on the 9th day of September, 2016, I presented the foregoing to the Clerk of Court for filing and uploading to the CM/ECF system which will send notification of such filing to the following e-mail address:

Rachel J. Goldfarb
The Law Office of Rachel J. Goldfarb
9249 South Broadway, #200
Suite 425
Highlands Ranch, CO 80129
rjgoldfarblaw@gmail.com

*Attorney for the Plaintiffs*

C. Allen Black, Jr.
The Law Office of C. Allen Black, Jr.
1579 Montgomery Road
Allison Park, PA 15101
allenblack@sunpillar.com

*Attorney for the Plaintiffs*

_____*/s/* Christina M. Huszcza_____